**W. B. CLEVELAND and Katherine W. Cleveland, Plaintiffs,**

v.

**Jack H. McNABB, United States of America, Commodity Credit Corporation, Ralston Purina Company, TFC Marketing Service, Inc., and John S. Wilder and W. W. Wilder, individually and as partners doing business as Longtown Supply Company, Defendants.**

**Civ. A. No. C–69–134.**

United States District Court,
W. D. Tennessee, W. D.

March 30, 1970.

Troy W. Tomlin, Somerville, Tenn., and Joel H. Porter, Burch, Porter & Johnson, Memphis, Tenn., for plaintiffs.

John S. Wilder, Somerville, Tenn., for defendants Jack McNabb, John S. Wilder and W. W. Wilder, ind. and d/b/a Longtown Supply Co.

Herbert Moriarty, Jr., Memphis, Tenn., for defendant Ralston Purina.

Kemper Durand, Asst. U. S. Atty., Memphis, Tenn., for defendants The United States and Commodity Credit Corp.

Bobby C. Cunningham, La Vergne, Tenn., for defendant TFC Marketing Service.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

The plaintiffs here, Dr. W. B. Cleveland and his wife, Katherine Cleveland, are owners of lands situated in Fayette County, Tennessee. On January 17, 1967 these plaintiffs entered into a written lease with the defendant Jack McNabb which lease provided that, for a period of five years, the tenant McNabb would pay the landlord an annual rental amounting to fifty dollars per acre for all acreage allotted to cotton by the government and ten dollars per acre for all acreage actually planted in soybeans. (This lease is attached to the Amended and Supplemental Complaint as Exhibit A). In this action the plaintiffs sue the defendant McNabb for rent allegedly due and owing from the 1968 crop year. Further, the plaintiffs sue the defendants TFC Marketing Service, Inc., John S. Wilder and W. W. Wilder, individually and as partners doing business as Longtown Supply Company, the Commodity Credit Corporation and the United States of America to enforce landlord's liens for the value of purchased crops to the extent that such liens are necessary to satisfy any unpaid rent. It is undisputed that each of this group of defendants received crops raised by the defendant McNabb on the plaintiffs' lands. (The United States is named as a defendant because the Commodity Credit Corporation is a branch of the United States Department of Agriculture. The named defendant Ralston Purina Company has by consent been dismissed).

With regard to the liability of the defendant McNabb for rent it is stipulated and the proof otherwise shows that the cotton allotment in 1968 for the lands leased to McNabb by the plaintiffs amounted to 352.5 acres. Also, the proof shows that in that year McNabb planted 618.7 acres of soybeans. Thus, by the terms of the written lease, the defendant McNabb is liable to the plaintiffs for rent in the amount of $23,812.00.

■ The only defense presented by the defendant McNabb is that approximately $3700.00 of the above amount is not owing, because, subsequent to the signing of the written lease, he entered into an oral contract with the plaintiffs modifying the written lease. It may be, as the plaintiffs contend, that the Tennessee Statute of Frauds, T.C.A. § 23–201, would prevent the Court from giving effect to an oral modification of a written lease of real property even if we found such a modification to have been agreed upon by the parties. However, we do not reach this question because we do not believe that the defendant McNabb has carried his burden of proving that the parties to the lease actually agreed to an oral modification. That the defendant McNabb has the burden of proof on this issue is clear, since he is the party asserting the modification. Seward v. Garner, 19 Tenn.App. 440, 89 S.W.2d 770 (1935). The only proof introduced by the defendant McNabb is his own

testimony that he and Dr. Cleveland orally agreed that he could plant rent-free any land that was cleared by him. Further, McNabb testified that he spent $8,000 on such clearing, attributing approximately $5,000 of this sum to his own labor and the expense of operating his small bulldozer. Dr. Cleveland, on the other hand, testified that while he and McNabb had discussed the possibility of allowing McNabb to farm rent-free any land that he cleared, no actual agreement was ever reached, and particularly no agreement was reached that would modify the written lease during the year 1968. Also, Alva Carpenter testified for the plaintiffs that he had measured the soybean crop on the plaintiffs' lands in 1968 and had likewise taken measurements on the property in 1967. On cross-examination he was asked by the defendant McNabb's counsel how many acres appeared to have been cleared between 1967 and 1968 and Carpenter answered that he hadn't noticed that any acres had been cleared. Therefore, on this record we find that McNabb cleared little, if any, land and further find that there was no oral contract modifying the written lease. Accordingly, we find and conclude that the plaintiffs are entitled to judgment against the defendant McNabb in the sum of $23,812.00.[1]

As stated previously, the plaintiffs also seek in this action to enforce landlord's liens for the value of crops raised on their lands in 1968 to the extent that such liens are necessary to satisfy any unpaid rent. In this connection it is stipulated that the defendant Commodity Credit Corporation made a loan on and later acquired ownership of cotton grown on the plaintiffs' lands in 1968 and that this cotton had a value of $27,155.40. It is also stipulated that the defendant Longtown Supply Company, a partnership formed by John S. Wilder and W. W. Wilder, purchased cotton grown on the plaintiffs' lands in 1968, which cotton had a value of $4,987.53. Finally the proof shows that the defendant TFC Marketing Service, Inc. purchased soybeans raised on the plaintiffs' lands, which soybeans had a value of $17,711.49.

To support their contention that they are entitled to liens on all crops grown on their lands in 1968, the plaintiffs rely on the Tennessee Crop Liens Statute, T.C.A. §§ 64–1201 to 64–1214. In particular the plaintiffs rely on the following sections:

*64–1201. Landlord's lien for rent.*— A landlord and one controlling land by lease or otherwise shall have a lien on all crops grown on the land during the year for the payment of the rent for the year, whether the contract of rental be verbal or in writing, and this lien shall inure to the benefit of the assignee of the lienor. [Acts 1923, ch. 71, § 1; Shan.Supp. § 5299a1; mod. Code 1932, § 8017.]

*64–1207. Liability of purchaser of crop.*—A purchaser, with or without notice, of a crop subject to any of such liens shall be liable to the lienholder for the value of the crop, or any part of it, so purchased, not, however, to exceed the amount of rent due and/or supplies furnished and costs incurred in collecting same, if the crop, or part thereof, is delivered to or taken possession of by such purchaser before July 1st after the crop year; provided, the lienholder shall bring his suit against the purchaser within one (1) year from the date of delivery to or possession taken by the latter. [Code 1858, § 3542 (deriv. Acts 1857–1858, ch. 52, § 3); Acts 1879, ch. 72; Shan., § 5302; Acts 1921, ch. 42, § 1; 1923; ch. 71, 7; Shan.Supp. §§ 5299a6, 5302; mod. Code 1932, § 8023.]

*64–1212. Joint payment by purchaser.* —Should a tenant, by the consent and

---

1. There is in the record a waiver of lien of Dr. Cleveland in favor of the Farmers Home Administration. It is undisputed that McNabb was never financed by the F.H.A. and we therefore conclude that the agreement never became operative. It is unclear whether the defendant McNabb and the other defendants contend that this waiver has any bearing upon the issues in this action.

permission of his landlord, which consent and permission shall be in writing and signed by such landlord, sell his crop or any part thereof to any purchaser, upon which there exists a lien in favor of the landlord for either rent or supplies of any kind, the purchaser shall pay the purchase price for such crop to the tenant and his landlord jointly, or the purchaser shall issue the check or other written instrument given in lieu of the money for such crop, payable to the landlord and tenant jointly, and before such check or other written instrument shall be cashed or paid, it shall have written or indorsed on the back thereof the genuine signature of the landlord in his own handwriting, or in the handwriting of his duly authorized agent or attorney. [Acts 1921, ch. 158, § 1; Shan.Supp. § 5302a3; mod. Code 1932, § 8028.]

■ All of the defendants seemingly concede that they are purchasers within the meaning of the Crop Liens statute, and there is no contention that delivery of the crop was not made or that this action was not filed in accordance with the requirements set out in this statute. Further, though one of the defendants contended in the answer that recording of the lease is necessary, it is clear from the statute that such is not necessary and that even a verbal lease may create a crop lien. However, each of the defendants contends, on the grounds set out herein, that the plaintiffs in this case are not entitled to a landlord's lien.

First, the TFC Marketing Service, Inc. and the United States contend that the plaintiffs, by their conduct, are estopped from asserting, or have waived their right to a landlord's lien. On this issue, the undisputed proof shows that the plaintiffs are residents of Cleveland, Ohio and that they exercised no control or supervision over the planting, growing or sale of the crops raised on their lands by Jack McNabb. It is clear from the proof in this case that McNabb was entirely responsible for the production of crops in 1968 and that he sold these crops with no assistance or intervention from the plaintiffs.

■ As far as the TFC Marketing Service is concerned, apparently McNabb delivered soybeans to TFC and when asked whose soybeans they were, he replied that they were his. TFC then made out a check to McNabb for the value of the soybeans. On this proof TFC contends that by their failure to exercise any control or supervision over the crops on their lands, the plaintiffs are estopped from asserting a landlord's lien. Also, TFC contends that by acquiescing in the conduct of McNabb, the plaintiffs have waived their lien. Essentially it is the position of the defendant TFC Marketing Service, Inc. that this Court should soften the effect of the strong Tennessee Crop Liens statute as against innocent purchasers of grain. That this is TFC's position is made clear from the closing statement in its post-trial brief:

"The statute upon which the plaintiff relies is an antiquated relic of the pastoral 1800's. It is completely unreconcilable with the progressive spirit of the recently passed Uniform Commercial Code and the free negotiability of goods.

"It was passed during a time when the economy was largely agricultural and the farms were small family-owned affairs. Everyone in the County knew everyone else and there was little question as to who was the owner of any products marketed in the county. There was not such a burden upon a purchaser to determine the legal title to products purchased."

Though we appreciate the eloquence of the defendant TFC Marketing Service, we can only say that it is addressing its argument to the wrong forum. It is not for this Court to ignore a provision embodied in a statute enacted by the Tennessee legislature. This being the case we need only to determine whether, as contended, the plaintiffs' conduct in this case deprives them of their landlord's lien within the existing statute. In examining the statute, we find nowhere

therein an indication that a landlord must exercise control or supervision over crops grown on his land, or that he must at any point take possession of them, and the defendants have not cited any statutory or other reference for such a proposition. Further, T.C.A. § 64–1212 provides that a waiver of such a lien must be in writing and even then the one who purchases crops from the tenant by check must make the check payable jointly to the tenant and to the landlord. It has been noted that this section gives protection to both the purchaser and the landlord, First Citizens Nat. Bk. v. Cottonseed Products Co., 11 Tenn.App. 269 (1930), and we think that this section clearly places the burden upon the purchaser of crops to determine whether he is dealing with a tenant when it issues a check for crops.

■ Along this same line, the United States argues that the proof shows that there is traditionally in Western Tennessee a distinction for lien purposes between a lease for cash rent and one for crop rent. In the latter type of lease the landlord's rent is a portion of the crops grown on his land, while in the former lease the landlord's rent is a set sum of cash. The government contends that according to custom and usage in this section of the country it is understood that the landlord has a lien on crops only when the lease is one for crop rent. Assuming there is such a local custom and usage, we find that plaintiffs did not know of such a custom that, by receiving cash rent, they would have no lien and we can find no statutory[2] or other legal basis for the distinction argued by the government.

■ We therefore find and conclude that plaintiffs did not waive their lien, nor are they estopped to enforce their lien.

It is next contended by the defendant United States that the plaintiffs are not entitled to a lien upon crops purchased by the Commodity Credit Corporation because the Commodity Credit Corporation was a good faith purchaser for value of negotiable warehouse receipts. As a result of such negotiation, the United States contends, the Commodity Credit Corporation acquired title to the crops in question free of the plaintiffs' crop lien.

Article Seven of the Uniform Commercial Code, as adopted in Tennessee, provides that, with limited exceptions, a holder to whom a negotiable document of title has been "duly negotiated" thereby acquires title to the goods described in such documents. T.C.A. § 47–7–502. The term "duly negotiated" is defined in the preceding section, T.C.A. § 47–7–501, as follows:

> 47–7–501. Form of negotiation and requirements of "due negotiation."
>
> \*    \*    \*    \*    \*    \*
>
> (4) A negotiable document of title is 'duly negotiated' when it is negotiated in the manner stated in this section to a holder who purchases it in good faith without notice of any defense against or claim to it on the part of any person and for value, unless it is established that the negotiation is not in the regular course of business or financing or involves receiving the document in settlement or payment of a money obligation.

In addition, T.C.A. § 47–1–201 provides in part:

> "(25) A person has 'notice' of a fact when \* \* \* (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."

The United States contends that the Commodity Credit Corporation received the warehouse receipts in question "duly negotiated." The plaintiffs, on the other hand, contend that the negotiation in question was not in the regular course of

---

2. It should be noted that, under T.C.A. § 64–1211, where there is a provision for *crop* rental, title to the landlord's share is vested in him as it is grown. This provision by inference makes it even clearer that a cash rental landlord is entitled to a lien under § 64–1201.

business and that the Commodity Credit Corporation, from all the facts and circumstances known to it, had reason to know of the plaintiffs' lien. Consequently it is the plaintiffs' position that the Commodity Credit Corporation did not acquire title, through due negotiation, to the crops its purchased.

The proof shows that the defendant McNabb delivered the cotton he had raised on the plaintiffs' lands and later sold to Commodity Credit Corporation to a cotton gin. After the cotton was ginned it was taken directly to a warehouse which issued a negotiable warehouse receipt for each bale of cotton it held. McNabb later received these receipts which were issued in his name as producer at the cotton gin and took them to the Agricultural Stabilization and Conservation Service office, which is the government office administering the cotton loan program in Somerville, Tennessee. McNabb left the warehouse receipts at this office and in return ultimately received a "loan."[3]

A clerk from the ASCS office, Mrs. Sally Pat McNeil, testified that she had made no inquiry as to where the defendant McNabb had grown his cotton. The loan papers executed by this clerk show in the space designated for information concerning liens that there was no lien on the cotton grown by McNabb. Mrs. McNeil testified that she obtained this information from McNabb himself. McNabb testified that a copy of his lease with the plaintiffs was on file in the ASCS office. Further, the proof shows that the warehouse receipts referred to cotton gin tickets which in turn indicate that the cotton delivered by McNabb was grown on the plaintiffs' lands.

■ On this record we find that the warehouse receipts were not "duly negotiated" to the Commodity Credit Corporation so as to cut off the plaintiffs' lien. First, as the plaintiffs point out, the Department of Agriculture's own regulations, specifically 7 C.F.R. 1427.-

1364, require that cotton going into the loan program be lien-free. This regulation, we think, indicates that some inquiry is to be made by the local ASCS office to determine if there is a lien on cotton which is to be put into the government loan program. McNabb, as a tenant farmer (albeit a large one) could not reasonably be expected to be fully familiar with the Tennessee Lien statutes and therefore limited inquiry from him alone, even if it might reasonably be assumed that he would give an honest answer, was not sufficient, especially since Mrs. McNeil only asked McNabb whether there was a lien on the cotton he had grown, and not whether his farm land was leased. Also, as indicated, the information that McNabb was a tenant farmer was readily available to the ASCS office. Either the government office disregarded the Tennessee Lien statute or was unfamiliar with it. At any rate, we think from all the facts and circumstances known to it, the Commodity Credit Corporation had reason to know of the plaintiffs' lien. Further, we do not believe that the existence of the above-mentioned custom and usage should lead us to the conclusion that the government through its representatives had no reason to know that the lien existed.

Since we conclude that these warehouse receipts were not "duly negotiated," we do not have to determine whether, under T.C.A. § 47–7–503, these documents of title were defeated for other reasons.

Finally, the defendant Longtown Supply Company as well as the defendant Commodity Credit Corporation contend that although the plaintiffs may be entitled to liens on cotton grown upon their lands, each plaintiff has the duty of proving which bales of cotton were raised upon his or her land. This contention is based upon the stipulation that Dr. Cleveland owned part of the land leased by Jack McNabb, Dr. Cleveland's land being referred to as the J–1200 farm in the record, and that Mrs. Cleveland owned the

---

3. Under the system, if the "loan" is not paid, the cotton becomes the property of the government.

remaining portion of the land leased to McNabb, referred to as the J–9456 farm. Because bales of cotton are not fungible, it is contended that there can be no estimation and strict proof is required as to where each bale was grown before either plaintiff is entitled to a lien on that particular bale.

■ We find no merit in this contention. The written lease refers to Dr. and Mrs. Cleveland collectively as "the landlord." Moreover, the proof shows that the two farms in question are contiguous along a line of some considerable length, and that a roughly equivalent number of acres of cotton was allotted to each of the two farms. The two farms were treated as one entity in the lease, with the entire cash rent to be paid in a lump sum to "the landlord." When Jack McNabb took the cotton to be ginned, the place of origin listed on the gin ticket was simply the "Cleveland farm"; the two parcels were never identified separately. It is true, as the government points out, that the Tennessee Crop Liens statute gives "the landlord a lien on crops *grown on the land*. The purchaser of *this crop* is liable to the landlord." But since the plaintiffs here were collectively referred to as "the landlord" in the lease, and since McNabb obviously regarded to two parcels together as an individual farm, we can see no reason why the two plaintiffs together are not entitled to a lien on the cotton raised on their lands. It should be noted that the defendants have failed to cite a single authority which will support their proposition.

■ TFC Marketing Service makes the separate contention that, as purchaser only of soybeans, it could be liable only for that part of the rent attributable to the acreage planted in soybeans. The answer to this contention is that T.C.A. § 64–1201 provides that the landlord shall have a "lien on *all* crops grown on the land during the year for the payment of rent for the year * * *." (Emphasis added.) Further, we do not believe that the presence in the lease of the provision measuring the total amount of cash rent by the cotton allotment acreage and the acreage of soybeans actually planted indicates an intention by the parties to the lease that the lien provided by law was altered as TFC Marketing Service contends.

For the reasons set out herein we find and conclude that the plaintiffs are entitled to liens upon the crops purchased by each of the defendants in the amounts that have been stipulated to be the value of the crops received by them but in each case not to exceed the amount owed plaintiffs by McNabb. There are no cross actions here and therefore we do not adjudicate any claims among the defendants upon payment by them of any or all of the amount due plaintiffs.